No. 26-1518

# IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

RAI STRATEGIC HOLDINGS, INC., R.J. REYNOLDS VAPOR COMPANY, R.J. REYNOLDS TOBACCO COMPANY, RAI SERVICES CO.,

*Appellants,*

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee.*

On Appeal From The United States International Trade Commission Investigation in No. 337-TA-1410

## BRIEF OF *AMICUS CURIAE* STATE OF WEST VIRGINIA IN SUPPORT OF APPELLANTS AND REVERSAL

JOHN B. MCCUSKEY
 *Attorney General*

OFFICE OF THE WEST
VIRGINIA ATTORNEY
GENERAL
1900 Kanawha Blvd., East
Building 1, Room E-26
Charleston, WV 25305
Phone: (304) 558-2021
cdavid@wvago.gov

CALEB B. DAVID
 *Deputy Solicitor General*
 *Counsel of Record*

*Counsel for Amicus Curiae State of West Virginia*

<u>**CERTIFICATE OF INTEREST**</u>

**Case Number:**    26-1518

**Short Case Caption:**   *RAI Strategic Holdings, Inc. v. ITC*

**Filing Party/Entity:**   State of West Virginia

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: March 24, 2026                          Signature:  /s/ *Caleb B. David*
                                                                      Caleb B. David

1. **Represented Entities:** Provide the full names of all entities represented by undersigned counsel in this case.  Fed. Cir. R. 47.4(a)(1).

    State of West Virginia

2. **Real Party in Interest:**      Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.  Fed. Cir. R. 47.4(a)(2).

    Not applicable.

3. **Parent Corporations and Stockholders:**      Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  Fed. Cir. R. 47.4(a)(3).

    Not applicable.

i

4. **Legal Representatives:** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

Not applicable.

5. **Related Cases:** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

No/not applicable.

6. **Organizational Victims and Bankruptcy Cases:** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

Not applicable.

# TABLE OF CONTENTS

Certificate of Interest.................................................................... i

Table of Authorities....................................................................iv

Introduction and Interests of *Amicus Curiae* .......................................1

Summary of the Argument...........................................................4

Argument....................................................................................4

    I.    Illicit Chinese Vapes Endanger Public Health.........................5

    II.   Illegal Vape Products Dominate the Market..........................9

    III. Illicit Chinese Vapes Harm Consumers. ...............................10

    IV.  Chinese Vape Manufacturers Avoid Product Detection at Customs, So a General Exclusion Order is Necessary.................................................11

Conclusion.................................................................................14

Certificate of Compliance ..........................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bidi Vapor LLC v. FDA,*
  47 F.4th 1191 (11th Cir. 2022) ..............................................................7, 8

*Certain Electronic Shavers,*
  Inv. No. 337-TA-1230, 2022 WL 1448793 (USITC May 3, 2022)................13

*Certain Foldable Reusable Drinking Straws,*
  Inv. No. 337-TA-1183, USITC Pub. 5306, Comm'n Op. at 9
  (Feb. 10, 2021) ..............................................................13

*Certain Toner Cartridges,*
  Inv. No. 337-TA-1174, 2020 WL 7586820 (USITC Dec. 17,
  2020) ..............................................................13

*Certain Vacuum Insulated Flasks & Components Thereof,*
  Inv. No. 337-TA-1216, 2022 WL 375176 (USITC Feb. 3, 2022) ..................12

*Davis v. HSBC Bank Nevada, N.A.,*
  691 F.3d 1152 (9th Cir. 2012)..............................................................10

*Hillsborough County v. Automated Med. Lab'ys, Inc.,*
  471 U.S. 707 (1985)..............................................................3

*Spansion, Inc. v. Int'l Trade Comm'n,*
  629 F.3d 1331 (Fed. Cir. 2010) ..............................................................14

*Vapor Tech. Assoc. v. Taylor,*
  No. 3:24-CV-74, 2025 WL 348684 (E.D. Ky. Jan. 30, 2025) ....................1, 10

*Wisconsinites for Alternatives to Smoking & Tobacco, Inc. v.
  Casey,*
  No. 25-CV-552, 2025 WL 2582099 (W.D. Wis. Sept. 5, 2025) ......................3

**Statutes**

18 U.S.C. § 542 ..............................................................10

19 U.S.C. § 1337(d)(1) ...........................................................4

19 U.S.C. § 1337(d)(2)(A) ...................................................5, 11

19 U.S.C. § 1337(d)(2)(B) ...................................................5, 11

19 U.S.C. § 1595a ...............................................................10

21 U.S.C. § 387b ................................................................10

21 U.S.C. § 387c ................................................................10

## Regulations

21 C.F.R. § 1143.3 ..............................................................10

## Other Authorities

*$76 Million in Illegal E-Cigarettes Seized in Joint Federal Operation*, U.S. FOOD & DRUG ADMIN. (Oct. 22, 2024), https://tinyurl.com/5ydxv2sv ...........................................9

*E-cigarette, or Vaping Product, Use Associated Lung Injury (EVALI)*, YALE MED., https://tinyurl.com/5dyyn3cr (last visited Mar. 23, 2026)...........................................7

*E-Cigarettes, "Vapes" and Other Electronic Nicotine Delivery Systems (ENDS) Authorized by the FDA*, U.S. FOOD & DRUG ADMIN., https://tinyurl.com/bdwxxwek (last updated March 13, 2026) ...................................................1

Emma Rumney et al., *How Middlemen Funnel Illegal Chinese Vapes Into the United States*, REUTERS (June 23, 2025, 9:50 a.m.) , https://tinyurl.com/29mxdaux ...........................2, 12

Eva Roytburg, *A major nicotine company went through New Yorkers' thrown-out vapes and found that 99% were illegally imported from China*, FORTUNE (May 30, 2024, 10:17 am), https://tinyurl.com/fanvz7n5...........................................1

*FDA Warns Firms Illegally Selling E-Cigarettes Resembling Products With Smart Technology, Including Phones and Gaming Devices*, U.S. FOOD & DRUG ADMIN., https://tinyurl.com/2s4d6kt7 (last updated Oct. 30, 2024).............................7

Kat Kerlin, *Disposable E-Cigarettes More Toxic Than Traditional Cigarettes*, UC DAVIS (June 25, 2025), https://tinyurl.com/nhekk9za.............................6

Kathryn Ghion, *Urine and heroin found in vapes at West Virginia schools*, WTRF, https://tinyurl.com/h44338h4 (last updated Apr. 12, 2022, 9:00 a.m.) .............................6, 11

Laura López González, *Believe It or Not, 1 Vape has 20 Cigarettes Worth of Nicotine*, UNIV. OF CAL. S.F. (Dec. 16, 2024), https://tinyurl.com/4cy99uu3.............................6

*Lung Injuries Associated with Use of Vaping Products*, U.S. FOOD & DRUG ADMIN., https://tinyurl.com/43pn3xtf (last updated Apr. 13, 2020) .............................6

Matthew Perrone, *Elf Bar finds an easy way around US vape import ban: a name change*, ASSOCIATED PRESS, https://tinyurl.com/bp4r5s9d (last updated Oct. 13, 2023, 4:06 p.m.).............................12

Matthew Perrone, *Thousands of unauthorized vapes are pouring into the US despite the FDA crackdown on fruity flavors*, ASSOCIATED PRESS (June 26, 2023, 7:43 p.m.), https://tinyurl.com/326k7jey.............................9

Ollie Ganz et al., *Regional variations and market share of FDA-authorised products for top-selling electronic cigarette brands in the USA: 2022–2024*, TOBACCO CONTROL: ONLINE FIRST (May 30, 2025), https://tinyurl.com/39sjy3fp .............................9

Press Release, U.S. Customs & Border Prot., 53,700 Electronic Nicotine Delivery Systems seized by Chicago CBP (June 25, 2024), https://tinyurl.com/3uytauyb.............................10

Results from the Annual National Youth Tobacco Survey, U.S. FOOD & DRUG ADMIN., https://tinyurl.com/33jcm84f (last updated Jan. 22, 2025)......................................................................................2

Robert Schmad, *Chinese vape imports surge despite Trump administration's crackdown, data suggests*, WASH. EXAM'R (Dec. 9, 2025), https://tinyurl.com/2wku5ab3 ................................................12

Sam Kirk, *West Virginia leads the nation in teen vaping: Survey* (Sept. 15, 2025, 1:17 PM EDT), https://tinyurl.com/2fb5tvze........................2

Soha Talih et al., *Electrical features, liquid composition and toxicant emissions from 'pod-mod'-like disposable electronic cigarettes*, 31 TOBACCO CONTROL 667 (2021), https://tinyurl.com/3rb4zva8.........................................................................5

Spencer Lindquist, *China Is Flooding America With Illegal Vapes – And More Than 90% Fly Under the Radar*, DAILY WIRE (Apr. 23, 2025), https://tinyurl.com/3vk328f3 ................................2, 12

*Vaping substantially less harmful than smoking, largest review of its kind finds*, KING'S COLL. LONDON (Sept. 29, 2022), https://tinyurl.com/526ydcsv ...........................................................................7

**INTRODUCTION AND INTERESTS OF *AMICUS CURIAE*[1]**

States regulate retail vape sales. Illicit Chinese vapes make that job exponentially harder.

Unlike other nicotine and tobacco products, the current vaping market largely operates outside the bounds of federal law. The Food and Drug Administration has approved only a few dozen vaping products. *E-Cigarettes, "Vapes" and Other Electronic Nicotine Delivery Systems (ENDS) Authorized by the FDA*, U.S. FOOD & DRUG ADMIN., https://tinyurl.com/bdwxxwek (last updated March 13, 2026). All other vape products are unauthorized. And "unauthorized vapor products … are illegal products." *Vapor Tech. Assoc. v. Taylor*, No. 3:24-CV-74, 2025 WL 348684, at *2 (E.D. Ky. Jan. 30, 2025).

Still, these illegal products permeate the retail market. Indeed, "FDA-authorized products" accounted for "just 2.4%" of 2023 vape sales. Eva Roytburg, *A major nicotine company went through New Yorkers' thrown-out*

---

[1] The State of West Virginia has authority to file this amicus brief under Rule 29(a)(2), which permits "a state" to "file an amicus brief without the consent of the parties or leave of court." Fed. R. App. P. 29(a)(2). Rule 29(a)(4)(E), which doesn't apply to amici—including States— "listed in the first sentence of Rule 29(a)(2)." To comply with the Clerk's Notice, West Virginia's counsel authored this brief in whole; no party or party's counsel contributed money to fund preparing or submitting this brief; and no person contributed money to fund preparing or submitting this brief. Fed. R. App. P. 29(a)(4)(E)(i)-(iii).

*vapes and found that 99% were illegally imported from China*, FORTUNE (May 30, 2024, 10:17 am), https://tinyurl.com/fanvz7n5.  And vapes particularly dominate the youth market—four times as many students reported using e-cigarettes over "traditional" cigarettes.  *See* Results from the Annual National Youth Tobacco Survey, U.S. FOOD & DRUG ADMIN., https://tinyurl.com/33jcm84f (last updated Jan. 22, 2025).  In West Virginia alone, nearly one in five high schoolers uses vapes—the great majority almost assuredly with illegal products.  Sam Kirk, *West Virginia leads the nation in teen vaping: Survey*, 12WBOY (Sept. 15, 2025, 1:17 PM EDT), https://tinyurl.com/2fb5tvze.

The problem begins before products reach shelves, as many illegal vapes come from abroad.  China exported $3.7 billion in vapes to the United States in 2024.  Spencer Lindquist, *China Is Flooding America With Illegal Vapes – And More Than 90% Fly Under the Radar*, DAILY WIRE (Apr. 23, 2025), https://tinyurl.com/3vk328f3.  But over 90% of those products went unrecorded in American import data. *Id.*  Manufacturers and trading partners create that discrepancy by mislabeling illicit vapes as "other items like shoes and toys."  Emma Rumney et al., *How Middlemen Funnel Illegal Chinese*

*Vapes Into the United States*, REUTERS (June 23, 2025, 9:50 a.m.), https://tinyurl.com/29mxdaux.

This deception at the border makes it impossible for States to exercise their traditional police power to bar illicit sales. States like West Virginia have "primar[y]" authority over matters of "health and safety." *Hillsborough County v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 719 (1985). That's true even as to products like these, as Congress has "expressly preserve[d] … states['] authority to regulate nicotine product sales." *Wisconsinites for Alternatives to Smoking & Tobacco, Inc. v. Casey*, No. 25-CV-552, 2025 WL 2582099, at *3 (W.D. Wis. Sept. 5, 2025). To that end, the State of West Virginia is interested in ensuring that only FDA-authorized products reach its market. Protecting public health requires strict vape regulation. Unregulated, illicit Chinese vapes target children. And they kill people. Yet right now, importation of these products happens—in violation of state flavor bans, registries, and more—with near impunity.

The Court should summarily reverse the International Trade Commission decision, and a general exclusion order should issue. That way, the federal government can seize these dangerous products before they—and the harms they perpetrate—are dispersed nationwide.

## SUMMARY OF THE ARGUMENT

Illicit Chinese vapes endanger public health.  They're unregulated.  So neither the FDA nor consumers know what chemicals they emit.  Because they're illegal and unregulated, these vape products skirt rules prohibiting flavored juices and flashy, kid-friendly packaging.  Although they're illegal, millions of illicit vapes evade customs and land on retail shelves.  Illicit vape manufacturers intentionally mislabel their products to avoid customs enforcement, and vape companies come and go—creating the archetypal whack-a-mole problem that general exclusion orders are designed to prevent.  Only a general exclusion order will have any enforcement teeth.

## ARGUMENT

The public interest favors a general exclusion order.  If the Commission finds a Section 337 violation, then it must "exclude[]" offending articles "from entry into the United States."  19 U.S.C. § 1337(d)(1).  This statutory command is limited only if the Commission finds that the infringing products should not be excluded after considering four effects: "public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers."  *Id.*  Those factors demand an exclusion order here.

But a limited exclusion order isn't enough.  The Commission may issue a general exclusion order if either of two conditions are met.  A general exclusion order may issue if it's "necessary to prevent circumvention of" a limited exclusion order, 19 U.S.C. § 1337(d)(2)(A), or if "there is a pattern of violation" making it "difficult to identify the source of infringing products," *id.* § 1337(d)(2)(B).  Both reasons exist here.

Illicit Chinese vapes endanger the public health.  Illegal vape manufacturers unfairly dominate the American vape market by selling unauthorized flavored products.  They harm American consumers by failing to disclose dangerous ingredients.  And illicit Chinese vape manufacturers and trading partners intentionally skirt American import inspections.  So only a general exclusion order can protect the public.

## I.  Illicit Chinese Vapes Endanger Public Health.

Illicit Chinese vapes are "designed with high nicotine concentration liquids and are capable of emitting much higher nicotine and carbonyl species relative to" FDA-approved devices.  Soha Talih et al., *Electrical features, liquid composition and toxicant emissions from 'pod-mod'-like disposable electronic cigarettes*, 31 TOBACCO CONTROL 667 (2021), https://tinyurl.com/3rb4zva8.  Illicit vapes have "lower quality in construction,

unreliable labeling, and lack of temperature control regulation that limits the power during operation." *Id.* That's frightening, seeing as how "popular vapes can easily have the nicotine content of three cartons or 600 cigarettes." Laura López González, *Believe It or Not, 1 Vape has 20 Cigarettes Worth of Nicotine*, UNIV. OF CAL. S.F. (Dec. 16, 2024), https://tinyurl.com/4cy99uu3.

Some illicit vapes contain chemicals and drugs beyond typical vaping liquids. State and federal officials have tested vaping devices and discovered urine, methamphetamine, and even heroin in their contents. Kathryn Ghion, *Urine and heroin found in vapes at West Virginia schools*, WTRF, https://tinyurl.com/h44338h4 (last updated Apr. 12, 2022, 9:00 a.m.). Disposable vapes—the preference of Chinese imports—are particularly prone to releasing lead, nickel, and other carcinogenic, toxic metals. Kat Kerlin, *Disposable E-Cigarettes More Toxic Than Traditional Cigarettes*, UC DAVIS (June 25, 2025), https://tinyurl.com/nhekk9za.

Illicit vapes' typical contents cause uniquely harmful damage. The FDA tested 843 vapes and found that 511 of them contained THC. *Lung Injuries Associated with Use of Vaping Products*, U.S. FOOD & DRUG ADMIN., https://tinyurl.com/43pn3xtf (last updated Apr. 13, 2020). Half of those THC-containing vapes tested positive for vitamin E acetate. *Id.* Researchers have

identified vitamin E acetate as the "main … cause" of "e-cigarette, or vaping, product use associated lung injury, or EVALI." *E-cigarette, or Vaping Product, Use Associated Lung Injury (EVALI)*, YALE MED., https://tinyurl.com/5dyyn3cr (last visited Mar. 23, 2026) (cleaned up).  And by February 2020, "the CDC had recorded over 2[,]800 hospitalizations" and "68 deaths" caused by EVALI.  *Id.*

To be sure, vaping is less harmful than cigarette smoking.  *Vaping substantially less harmful than smoking, largest review of its kind finds*, KING'S COLL. LONDON (Sept. 29, 2022), https://tinyurl.com/526ydcsv.  But unregulated vaping products cut against FDA-approved devices' harm-reduction outcomes.

What's more, illicit vapes target children.  Youth can use vaping devices "to play games, connect to a smartphone, receive text or call notifications, [or] play music." *FDA Warns Firms Illegally Selling E-Cigarettes Resembling Products With Smart Technology, Including Phones and Gaming Devices*, U.S. FOOD & DRUG ADMIN., https://tinyurl.com/2s4d6kt7 (last updated Oct. 30, 2024).

And "[f]lavored vaping products in particular play an outsized role in the problem of kids' vaping." *Bidi Vapor LLC v. FDA*, 47 F.4th 1191, 1212 (11th

Cir. 2022) (Rosenbaum, J., dissenting). Ninety-three percent of twelve-to-seventeen-year-olds who vape report "that they had their first vaping experience with a flavored product." *Id.* (Rosenbaum, J., dissenting). That figure isn't surprising "given that many companies … name their flavors things like Rainbow Nerds, Captain Loopy, Berry Gogurt, Nanner Puddin, Scrumdiddlyumptious, … and Blue Razz Cotton Candy." *Id.* (Rosenbaum, J., dissenting).

Illicit vape products "dish[] out a double-whammy of detrimental health effects on kids," too. *Bidi Vapor LLC*, 47 F.4th at 1212 (Rosenbaum, J., dissenting). They cause "acute or chronic lung injuries and even death," and they lead children "to become smokers of combustible cigarettes." *Id.* (Rosenbaum, J., dissenting) (cleaned up).

The public health risk posed by illicit vapes can't be overstated. Not only do these illegal products cause atypical harms—and even death—but they also target our most vulnerable population—our children. And their disease-causing contents induce consumers to unwittingly trade one deadly habit for another.

## II. Illegal Vape Products Dominate the Market.

Illicit vapes drastically reduce the public health benefits of choosing vaping over smoking. While the FDA has authorized only a few dozen vape products, more than 9,000 "different electronic cigarette devices" flooded U.S. markets by 2023. Matthew Perrone, *Thousands of unauthorized vapes are pouring into the US despite the FDA crackdown on fruity flavors*, ASSOCIATED PRESS (June 26, 2023, 7:43 p.m.), https://tinyurl.com/326k7jey. This illicit vape deluge resulted in only 13.8% of 2024 vape product sales being FDA approved. Ollie Ganz et al., *Regional variations and market share of FDA-authorised products for top-selling electronic cigarette brands in the USA: 2022–2024*, TOBACCO CONTROL: ONLINE FIRST (May 30, 2025), https://tinyurl.com/39sjy3fp.

One may wonder how illegal products dominate a market. Illicit vape manufacturers import their products through deception. They attempt—and, often, succeed—in "evad[ing] duties and detection" by "intentionally mis-declar[ing] [vapes] as items with no connection to vaping products and with incorrect values." *$76 Million in Illegal E-Cigarettes Seized in Joint Federal Operation*, U.S. FOOD & DRUG ADMIN. (Oct. 22, 2024), https://tinyurl.com/5ydxv2sv. In just one shipment in 2024, U.S. Customs and

Border Protection officers seized more than 50,000 illicit vapes mislabeled as "electronic atomizers." Press Release, U.S. Customs & Border Prot., *53,700 Electronic Nicotine Delivery Systems seized by Chicago CBP* (June 25, 2024), https://tinyurl.com/3uytauyb. So in contrast to the strict controls under which traditional tobacco-product producers operate, overseas vaping manufacturers brazenly refuse to comply with FDA restrictions.

Beyond dodging FDA regulation, these efforts violate a panoply of federal laws, too. *See, e.g.,* 19 U.S.C. § 1595a (aiding unlawful importation); 21 U.S.C. § 387b (adulterated tobacco products); 21 U.S.C. § 387c (misbranded tobacco products); 18 U.S.C. § 542 (entry of goods by false statements). So illicit vape manufacturers can't cry foul if competition is lessened by removing illegal products from the market. Put simply, illegal vape manufacturers' "interest in distributing unlawful vapor products … is not one that federal courts will protect." *Taylor*, 2025 WL 348684, at *3. This Court shouldn't protect that interest, either.

### III. Illicit Chinese Vapes Harm Consumers.

Consumers suffer when they lack a "free and informed choice." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (cleaned up). Regulated products provide consumers with health-risk information. *See* 21

C.F.R. § 1143.3 (requiring warning labels).  So consumers know what risks they're taking before they purchase a regulated product.

Illicit products lack pertinent information.  For starters, illicit vape manufacturers don't tell consumers their products are illegal.  They also fail to disclose their products' contents.  To be sure, some illicit products might disclose that they contain nicotine.  But no vape package says it contains urine or heroin.  *See* Ghion, *supra*.

Consumers are unaware of the health risks illicit vapes pose.  They're even unaware that the products are illegal.  That deception robs consumers of the ability to make free and informed choices.  And when it comes to illicit vapes, consumers' unawareness may hospitalize—or even kill—them.

## IV.  Chinese Vape Manufacturers Avoid Product Detection at Customs, So a General Exclusion Order is Necessary.

A general exclusion order is necessary here.  Illicit vape manufacturers' past conduct confirms that a limited exclusion order won't deter them from flooding the market with illegal products.

A general exclusion order is "necessary to prevent circumvention of" a limited exclusion order.  19 U.S.C. § 1337(d)(2)(A).  It's also necessary because "there is a pattern of violation" making it "difficult to identify the source of infringing products."  *Id.* § 1337(d)(2)(B).

The federal government devotes significant resources to illegal import enforcement. CBP coordinates with the FDA "at both the national and port levels, and utilizes risk analysis, targeting, and enforcement actions to intercept non-compliant shipments." Robert Schmad, *Chinese vape imports surge despite Trump administration's crackdown, data suggests*, WASH. EXAM'R (Dec. 9, 2025), https://tinyurl.com/2wku5ab3. Still, retailers sold $8 billion in unauthorized vape devices in 2024. Rumney, *supra*.

Illegal products don't reach the market by accident. A network of middlemen assist illicit vape manufacturers' subterfuge. Exporters mislabel products. Rumney, *supra*. Or they change their brand names. Matthew Perrone, *Elf Bar finds an easy way around US vape import ban: a name change*, ASSOCIATED PRESS, https://tinyurl.com/bp4r5s9d (last updated Oct. 13, 2023, 4:06 p.m.). On the other end, importers "openly advertise that their shipments of vapes and e-cigarettes into the United States are seldom inspected." Lindquist, *supra*. Companies "boast[]" about "low inspection rate[s]" at vaping trade shows and use social media to guarantee "compensation" to manufacturers "if their products are seized." *Id.* All these are tell-tale signs of circumstances justifying a general exclusion order. *See, e.g.*, *Certain Vacuum Insulated Flasks & Components Thereof*, Inv. No. 337-

TA-1216, 2022 WL 375176, at *7 (USITC Feb. 3, 2022) (Final) (explaining that "generic packaging, intermediary importers, the ease of selling products under various brand names, and similar efforts to impede" article identification support issuing a general exclusion order).

Given this history of flouting laws and blatant customs antagonization, a limited exclusion order simply won't do. Illicit vape manufacturers will use their old tricks to circumvent the order—just as they've repeatedly done to avoid import laws. The products are small, easing circumvention, and rejiggering the supply chain is no great feat. *See, e.g.*, *Certain Foldable Reusable Drinking Straws*, Inv. No. 337-TA-1183, USITC Pub. 5306, Comm'n Op. at 9 (Feb. 10, 2021) (explaining that "small size and portability of the products … makes circumvention of … a limited exclusion order[] easy and inexpensive"); *Certain Toner Cartridges*, Inv. No. 337-TA-1174, 2020 WL 7586820, at *11 (USITC Dec. 17, 2020) (noting that manufacturers had "the capacity to replicate their operations to appear as a new business within a few months"). So if a limited exclusion order issues, then Chinese manufacturers and exporters will just employ their traditional "whack-a-mole approach" of renaming, changing the shipping address, and starting anew. *See Certain Electronic Shavers*, Inv. No. 337-TA-1230, 2022 WL 1448793, at *7 (USITC

13

May 3, 2022) (describing how an order can issue when "sellers pop-up, disappear, and then pop-up again under a different name or brand").

A general exclusion order not only protects Appellants' property rights, but it also assists federal and state regulation of illicit products. And while general exclusion orders have sometimes been denied where they "would deprive the public of products necessary for some important health or welfare need," this case presents the *opposite* situation—there's nothing "necessary" about these products. *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1360 (Fed. Cir. 2010). Anything less than total exclusion leaves our borders, markets, and children vulnerable.

## CONCLUSION

The Court should summarily reverse the Commission ruling.

14

Respectfully submitted,

JOHN B. MCCUSKEY
   ATTORNEY GENERAL

/s/ Caleb B. David
Caleb B. David
   *Deputy Solicitor General*
   *Counsel of Record*

OFFICE OF THE ATTORNEY
GENERAL OF WEST VIRGINIA
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25301
(304) 558-2021
cdavid@wvago.gov

Dated: March 24, 2026

*Counsel for Amicus Curiae*
*State of West Virginia*

## CERTIFICATE OF COMPLIANCE

1.    This amicus brief complies with Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 27(d)(2)(A) because it contains 2,599 words.

2.    This amicus brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), as required by Fed. R. App. 27(d)(1)(E), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point CenturyExpd BT font.

/s/ Caleb B. David
Caleb B. David